1

2

3

4

5

6

7

8

9

10

11

12           **IN THE UNITED STATES DISTRICT COURT**

13           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

14

15
    BILL GAEDE,                                CASE NO. CV F 12-0468 LJO DLB
16
                        Plaintiff,             **ORDER ON DEFENDANTS' F.R.Civ.P. 12**
17                                             **MOTION TO DISMISS**
            vs.                                (Doc. 12.)
18
    UNITED STATES FOREST
19  SERVICE, et al.,

20                      Defendants.

21  _____/

22                          <u>**INTRODUCTION**</u>

23          Defendants U.S. Forest Service ("USFS") and USFS Park Ranger Richard Telles ("Park Ranger

24  Telles") seek to dismiss plaintiff Bill Gaede's ("Mr. Gaede's") unlawful detention claims as barred by

25  sovereign and qualified immunities.  Mr. Gaede filed no papers to oppose dismissal of his claims.  This

26  Court considered the USFS and Park Ranger Telles' (collectively "defendants'") F.R.Civ.P. 12(b)(1)

27  motion to dismiss on the record and VACATES the January 16, 2013 hearing, pursuant to Local Rule

28  230(g).  For the reasons discussed below, this Court DISMISSES Mr. Gaede's claims.

                                        1

# BACKGROUND[1]

## Mr. Gaede's Detention

On March 28, 2010, an African-American motorcyclist swerved to evade a pig and collided with a wooden bench in front of Mr. Gaede's property in rural Fresno County.  Park Ranger Telles arrived on the scene, became immediately belligerent with Mr. Gaede and asked Mr. Gaede if he was armed in that Mr. Gaede wore a pistol holder.  Mr. Gaede told and demonstrated to Park Ranger Telles that he was unarmed.  The complaint alleges that Park Ranger Telles took aggressive action against Mr. Gaede because the side of Mr. Gaede's truck bears a swastika and the Gaede name, a "family brand that has existed for over 40 years and is a registered brand."

For 20-30 minutes, Park Ranger Telles detained Mr. Gaede and prevented Mr. Gaede to enter his home by threat of Park Ranger Telles' tazer.  Prior to this incident, Mr. Gaede had suffered tazing during a home invasion and "felt compelled to comply out of complete fear of being tazed."

Mr. Gaede informed Park Ranger Telles that he "needed to relieve himself," and Park Ranger Telles told Mr. Gaede that "he would need to urinate where he was standing" to cause Mr. Gaede "to urinate on himself" by threatened tazer use "in the presence of other individuals standing nearby."

After a California Highway Patrol ("CHP") officer arrived, Park Ranger Telles left.  Mr. Gaede was never arrested.

## Mr. Gaede's Claims

The complaint alleges:

1.      A (first) 42 U.S.C. § 1983 ("section 1983") claim for "unlawful imprisonment under threat of violence" in that Mr. Gaede reasonably believed Park Ranger Telles "would commit violence against him when Defendant Telles threatened Plaintiff with his tazer, caused Plaintiff to remain in one location for 20 to 30 minutes causing Plaintiff to urinate on himself in the presence of others";

2.      A (second) unadorned false imprisonment claim;

3.      A (third) intentional infliction of emotional distress ("IIED") claim based on defendants'

---

[1]      The factual recitation is derived generally from Mr. Gaede's Complaint For Damages ("complaint"), the target of defendants' challenges, as well as other matters which this Court may consider.

1    "outrageous conduct" to imprison Mr. Gaede on his property and to cause Mr. Gaede to

2    urinate on himself "in the presence of others"; and

3    4.    A (fourth) negligent hiring, training and supervision claim that USFS negligently

4    permitted Park Ranger Telles "to have contact with the public" despite knowing or

5    having reason to know he was incompetent and unfit.

6                                    **DISCUSSION**

7                    **F.R.Civ.P. 12(b)(1) Motion To Dismiss Standards**

8    Defendants seek F.R.Civ.P. 12(b)(1) dismissal in that sovereign and related immunities preclude

9    invocation of this Court's subject matter jurisdiction.

10    F.R.Civ.P. 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction.

11   Fundamentally, federal courts are of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S.

12   375, 377, 114 S.Ct. 341 (1994). A "court of the United States may not grant relief absent a

13   constitutional or valid statutory grant of jurisdiction." *U.S. v. Bravo-Diaz*, 312 F.3d 995, 997 (9th Cir.

14   2002). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary

15   affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F. 2d 1221, 1225 (9th Cir. 1989).

16   Limits on federal jurisdiction must neither be disregarded nor evaded. *Owen Equipment & Erection Co.*

17   *v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396 (1978). "When subject matter jurisdiction is challenged

18   under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order

19   to survive the motion." *Tosco Corp. v. Communities for Better Environment*, 236 F.3d 495, 499 (9th Cir.

20   2001).

21    "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to

22   declare the law, and when it ceases to exist, the only function remaining to the court is that of

23   announcing the fact and dismissing the cause." *Ex parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264

24   (1868). The requirement that jurisdiction be established as a threshold matter "spring[s] from the nature

25   and limits of the judicial power of the United States" and is "inflexible and without exception."

26   *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884).

27    When addressing an attack on the existence of subject matter jurisdiction, a court "is not

28   restricted to the face of the pleadings." *McCarthy v. U.S.*, 850 F.2d 558, 560 (9th Cir. 1988). In such a

                                       3

case, a court may rely on evidence extrinsic to the pleadings and resolve factual disputes relating to jurisdiction. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.), *cert. denied*, 493 U.S. 993, 110 S.Ct. 541 (1989); *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983); *Smith v. Rossotte*, 250 F.Supp.2d 1266, 1268 (D. Or. 2003) (a court "may consider evidence outside the pleadings to resolve factual disputes apart from the pleadings").

No presumptive truthfulness attaches to a plaintiff's allegations, and the existence of disputed material facts does not preclude evaluation of the merits of jurisdictional claims. *Thornhill Pub. Co., Inc. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). On a factual attack of a complaint with affidavits or other evidence, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High School*, 343 F.3d 1036, 1040, n. 2 (9th Cir. 2003).

When a court considers "items outside the pleading" on a F.R.Civ.P. 12(b)(1) motion, the court resolves "all disputes of fact in favor of the non-movant." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996). The Ninth Circuit Court of Appeals explains that "where the district court has properly considered items outside the complaint in considering a motion to dismiss, the standard we apply upon de novo review of the record is similar to the summary judgment standard that the district court purported to apply." *Drier*, 106 F.3d at 847.

With these standards in mind, this Court turns to defendants' challenges to this Court's subject matter jurisdiction and related matters.

## Sovereign Immunity Bar To Section 1983 Claim Against USFS

Defendants contend that a section 1983 claim against USFS must be dismissed in the absence of a waiver of sovereign immunity.

Suits against the United States brought under the civil rights statutes, 42 U.S.C. §§ 1981, 1983, 1985, 1985 and 1988, "are barred by sovereign immunity." *Affiliated Professional Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999); *Unimex, Inc. v. United States Dept. of Housing and Urban Development*, 594 F.2d 1060, 1061 (5th Cir.1979). "Moreover, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), provides a cause of action only against government officers in their individual capacities." *Affiliated Professional*

4

1   *Home Health Care*, 164 F.3d at 286.

2       *"Bivens* does not provide a means of cutting through the sovereign immunity of the United States

3   itself." *Arnsberg v. U.S.*, 757 F.2d 971, 980 (9th Cir. 1985), *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1183

4   (1986).  The Ninth Circuit has explained:

5           *Bivens* created a remedy for violations of constitutional rights committed by
        federal officials acting in their individual capacities. In a paradigmatic *Bivens* action, a
6           plaintiff seeks to impose personal liability upon a federal official based on alleged
        constitutional infringements he or she committed against the plaintiff. *See, e.g., Balser*
7           *v. Department of Justice, Office of U.S. Trustee*, 327 F.3d 903, 909 (9th Cir.2003). "[A]
        *Bivens* action can be maintained against a defendant in his or her individual capacity
8           only, and not in his or her official capacity." *Daly-Murphy v. Winston*, 837 F.2d 348, 355
        (9th Cir.1987). This is because a *Bivens* suit against a defendant in his or her official
9           capacity would merely be another way of pleading an action against the United States,
        which would be barred by the doctrine of sovereign immunity. *Nurse v. United States*,
10          226 F.3d 996, 1004 (9th Cir.2000). Therefore, the Supreme Court has refused to extend
        *Bivens* remedies from individuals to agencies. *FDIC v. Meyer*, 510 U.S. 471, 484, 114
11          S.Ct. 996, 127 L.Ed.2d 308 (1994).

12  *Consejo de Desarrollo Economico de Mexicali, A.C. v. U.S.,* 482 F.3d 1157, 1173 (9th Cir. 2007); *see*

13  *Meyer*, 510 U.S. at 485, 114 S.Ct. 996 ("If we were to imply a damages action directly against federal

14  agencies, thereby permitting claimants to bypass qualified immunity, there would be no reason for

15  aggrieved parties to bring damages actions against individual officers.")

16      Mr. Gaede lacks a section 1983 or *Bivens* claim against USFS.  As such, the complaint's (first)

17  section 1983 claim against USFS is subject to dismissal.

18                      **FTCA[2] Bar To Tort Claims Against USFS**

19      Defendants contend that as a federal agency, the USFS in not subject to FTCA liability to warrant

20  dismissal of the complaint's false imprisonment, IIED and negligence claims.

21      "Section 1346(b) grants the federal district courts jurisdiction over a certain category of claims

22  for which the United States has waived its sovereign immunity and 'render[ed]' itself liable." *F.D.I.C.*

23  *v. Meyer*, 510 U.S. 471, 477, 114 S.Ct. 996 (1994) (citing *Richards v. U.S.*, 369 U.S. 1, 6, 82 S.Ct. 585,

24  589, (1962)).  "The FTCA is the exclusive remedy for tortious conduct by the United States, and it only

25  allows claims against the United States." *F.D.I.C. v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998). "The

26  United States is the only proper defendant in an FTCA action." *Lance v. U.S.*, 70 F.3d 1093, 1095 (9th

27  _____

28      [2]       FTCA refers to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) ("section 1346(b)"), 2671-
2680.

                                        5

1   Cir. 1995).

2          "The FTCA is the exclusive remedy for tortious conduct by the United States, and it only allows

3   claims against the United States. Although such claims can arise from the acts or omissions of United

4   States agencies (28 U.S.C. § 2671), an agency itself cannot be sued under the FTCA." *Craft*, 157 F.3d

5   at 706; *see Shelton v. United States Customs Service*, 565 F.2d 1140, 1141 (9th Cir.1977) ("It is well

6   established that federal agencies are not subject to suit eo nomine unless so authorized by Congress in

7   explicit language.")

8          In the absence of USFS' liability under the FTCA, the complaint's false imprisonment, IIED and

9   negligence claims are subject to dismissal as to the USFS.

10              **FTCA's Discretionary Function Exception Bar To Negligence Claim**

11         Defendants further contend that FTCA's discretionary function exception bars the complaint's

12   negligent hiring, training and supervision claim.

13                          ***The Discretionary Function Exception***

14         The FTCA is a "limited waiver of sovereign immunity, making the Federal Government liable

15   to the same extent as a private party for certain torts of federal employees acting within the scope of their

16   employment." *United States v. Orleans*, 425 U.S. 807, 813, 96 S.Ct. 1971 (1976).  The FTCA waives

17   the federal government's sovereign immunity when its employees are negligent within the scope of their

18   employment.  *Faber v. United States*, 56 F.3d 1122, 1124 (9th Cir. 1995).

19         FTCA's immunity waiver is limited by the discretionary function exception, which bars claims

20   "based upon the exercise or performance or the failure to exercise or perform a discretionary function

21   or duty on the part of a federal agency or an employee of the Government, whether or not the discretion

22   involved be abused."  28 U.S.C. § 2680(a).  The discretionary function exception "restores the

23   government's immunity in situations where its employees are carrying out governmental or 'regulatory'

24   duties." *Faber*, 56 F.3d at 1124.  "The purpose of the discretionary function exception is to protect the

25   ability of the government to proceed with decisionmaking in carrying out its unique and vital functions

26   without 'second-guessing' by the courts as to the appropriateness of its policy choices."  H.R. Rep. No.

27   1015, 101st Cong. 2nd. Sess. 134 (1991).

28         A federal defendant "bears the burden of proving the applicability of one of the exceptions to the

FTCA's general waiver of immunity" because such an exception "is analogous to an affirmative defense" to correctly place the burden on "the party which benefits from the defense." *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992). "Although the plaintiff bears the initial burden of proving subject matter jurisdiction under the FTCA, 'the United States bears the ultimate burden of proving the applicability of the discretionary function exception.'" *Faber*, 56 F.3d at 1124 (quoting *Prescott*, 973 F.2d at 701-702).

### *Two-Step Analysis*

The United States Supreme Court has articulated and refined a two-part test to determine whether a claim is subject to the discretionary function exception. *See United States v. Gaubert*, 499 U.S. 315, 322, 325, 111 S.Ct. 1267, 1273, 1275 (1991); *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958 (1988); *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813, 820, 104 S.Ct. 2755, 2764, 2768 (1984); *Dalehite v. United States*, 346 U.S. 15, 36, 73 S.Ct. 956, 968 (1953). The first step requires determination whether any "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Gaubert*, 499 U.S. at 322, 111 S.Ct. at 1273 (citing *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1958). If so, the discretionary function exception does not apply because there is no element of judgment or choice in the complained of conduct. *Gaubert*, 499 U.S. at 322, 111 S.Ct. at 1273. In other words, "a court must first consider whether the action is a matter of choice for the acting employee." *Berkovitz*, 486 U.S. at 1958, 108 S.Ct. 1954.

In the absence of an element of judgment or choice, "the inquiry is at an end." *Blackburn v. U.S.*, 100 F.3d 1426, 1429 (9th Cir. 1996). "[I]f the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect." *Berkovitz*, 486 U.S. at 1958, 108 S.Ct. 1954. Discretion is removed "under the FTCA when it is embodied in a specific and mandatory regulation or statute which creates clear duties incumbent upon the governmental actors." *Kennewick Irr. Dist. v. U.S.*, 880 F.2d 1018, 1026 (9th Cir. 1989). Nonetheless, a general regulation or policy "does not remove discretion unless it specifically prescribes a course of conduct." *Kelly v. United States*, 241 F.3d 755, 761 (9th Cir. 2001).

To determine whether the complained of conduct was grounded in judgment or choice, the

1    crucial first step is to determine exactly what conduct is at issue. *Autery v. United States*, 992 F.2d 1523,

2    1527-1528 (11th Cir. 1993), *cert. denied*, 511 U.S. 1081, 114 S.Ct. 1829 (1994). "The nature of the

3    conduct involved governs whether the so-called discretionary function exception applies." *Cunningham*

4    *v. United States*, 786 F.2d 1445, 1446 (9th Cir. 1986). The nature of the conduct, rather than the status

5    of the actor, . . . governs whether the discretionary function exception applies in a given case." *Varig*

6    *Airlines*, 467 U.S. at 813, 104 S.Ct. 2755. Negligence "is irrelevant to our inquiry at this point.

7    Governing administrative policy, not the [defendant's] knowledge of danger, determines whether certain

8    conduct is mandatory for purposes of the discretionary function exception." *Autery*, 992 F.2d at 1527-

9    1528.

10          If an element of choice or judgment is involved, the second step of the analysis is invoked to

11   determine whether the challenged discretionary acts "are of the nature and quality that Congress intended

12   to shield from tort liability." *Varig Airlines*, 467 U.S. at 813, 104 S.Ct. at 2764. Decisions that require

13   choice are exempt from suit under the FTCA if they are "susceptible to policy judgment" and involve

14   an exercise of "political, social, [or] economic judgment." *Gaubert*, 499 U.S. at 325, 111 S.Ct. at 1275;

15   *Varig Airlines*, 467 U.S. at 820, 104 S.Ct. at 2768. "When established governmental policy, as

16   expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise

17   discretion, it must be presumed that the agent's acts are grounded in policy when exercising that

18   discretion." *Gaubert*, 499 U.S. at 324, 111 S.Ct. 1267. If "a regulation allows the employee discretion,

19   the very existence of the regulation creates a strong presumption that a discretionary act authorized by

20   the regulation involves consideration of the same policies which led to the promulgation of the

21   regulations." *Gaubert*, 499 U.S. at 324.

22          Where there is room for policy judgment and decision, there is discretion of the sort protected

23   by 28 U.S.C. § 2680(a). *Dalehite*, 346 U.S. at 36, 73 S.Ct. at 968. "'[I]f judicial review would encroach

24   upon this type of balancing done by an agency, then the exception would apply.'" *Chamberlin v. Isen*,

25   779 F.2d 522, 523 (9th Cir. 1985) (quoting *Begay v. United States*, 768 F.2d 1059, 1064 (9th Cir. 1985)).

26          Moreover, "[t]he challenged decision need not be actually grounded in policy considerations."

27   *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998). The discretionary function exception applies

28   "[e]ven if the decision is an abuse of the discretion granted." *Terbush v. United States*, 516 F.3d 1125,

1129 (9th Cir. 2008).  "In sum, the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Berkovitz*, 486 U.S. 537, 108 S.Ct. 1954.

### *Hiring, Training And Supervision*

Defendants contend that they succeed on the discretionary function exception's first prong in that the complaint fails to identify a federal statute, regulation or policy "that specifically prescribes a course of action" as to hiring, training or supervision of Forest Service employees.  Defendants argue that employee supervision decisions are discretionary.  Turning to the second prong, defendants note that government hiring, training and supervision of employees "involves the types of judgment that the discretionary function exception was designed to shield."

In *Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009), the Ninth Circuit explained:

> As to the second *Gaubert* criterion, the decision of whether and how to retain and supervise an employee, as well as whether to warn about his dangerous proclivities, are the type of discretionary judgments that the exclusion was designed to protect. We have held the hiring, supervision, and training of employees to be discretionary acts. *See Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir.2000) (holding that plaintiff's claims of "negligent and reckless employment, supervision and training of" employees "fall squarely within the discretionary function exception"); *see also Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C.Cir.1997) (holding that "decisions concerning the hiring, training, and super[vision]" of employees are discretionary). Moreover, failure to warn about an individual's dangerousness is discretionary.

The "decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Vickers v. U.S.*, 228 F.3d 944, 950 (9th Cir. 2000).  "Permitting FTCA claims involving negligent hiring would require this court to engage in the type of judicial second-guessing that Congress intended to avoid." *Tonelli v. U.S.*, 60 F.3d 492, 496 (8th Cir. 1995).  "Issues of employee supervision and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception." *Tonelli*, 60 F.3d at 496.

Hiring, training and supervision are discretionary functions to subject the complaint's negligence claim to the discretionary function exception and dismissal.

### **Absence Of Park Ranger Telles' Tort Liability**

Defendants argue that the FTCA bars the complaint's false imprisonment and IIED claims

1  against Park Ranger Telles.

2  "The United States is the only proper defendant in an FTCA action." *Lance v. U.S.*, 70 F.3d

3  1093, 1095 (9th Cir. 1995).  Defendants appear to argue that Park Ranger Telles is not subject to the false

4  imprisonment and IIED claims in that federal employees, such as Park Ranger Telles, have "absolute

5  immunity from suit for common law torts committed within the scope of their employment." *Arthur v.*

6  *U.S. by and through Veterans Admin.*, 45 F.3d 292, 295 (9th Cir. 1995).

7  The complaint's tort claims against Park Ranger Telles are subject to dismissal in that he is an

8  improper defendant under the FTCA.

9  **Absence Of Park Ranger Telles' Section 1983 Liability**

10  Defendants contend that Park Ranger Telles is not subject to section 1983 liability in that the

11  complaint acknowledges that he is a federal employee and acted within the scope of his federal

12  employment.

13  Section 1983 "requires that the actionable conduct be under color of state law. Federal officers

14  acting under federal authority are immune from suit under section 1983 unless the state or its agents

15  significantly participated in the challenged activity." *Gibson v. U.S.*, 781 F.2d 1334, 1343 (9th Cir.

16  1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928 (1987).  Moreover, section 1983 requires "a violation

17  of federal law, not state law." *Galen v. County of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007).

18  Defendants point to the complaint's absence of facts that Park Ranger Telles participated with

19  state actors in that the complaint alleges that Park Ranger Telles left upon arrival of the CHP officer.

20  Defendants are correct that Park Ranger Telles is not subject to a section 1983 claim.

21  ***Bivens* Claim – Qualified Immunity**

22  Defendants argue that to the extent that the complaint alleges a *Bivens* claim against Park Ranger

23  Telles, he is entitled to qualified immunity.

24  ***Purpose And Elements***

25  Qualified immunity protects defendants "from liability for civil damages insofar as their conduct

26  does not violate clearly established statutory or constitutional rights of which a reasonable person would

27  have known." *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 943 (9th Cir. 2004), *overruled on other*

28  *grounds, Action Apt. Assoc., Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020 (9th Cir. 2007).  The

1    "heart of qualified immunity is that it spares the defendant from having to go forward with an inquiry

2    into the merits of the case.  Instead, the threshold inquiry is whether, assuming that what the plaintiff

3    asserts the facts to be is true, any allegedly violated right was clearly established." *Kelley v. Borg*, 60

4    F.3d 664, 666 (9th Cir. 1995).

5          The issue of qualified immunity is "a pure question of law." *Elder v. Holloway*, 510 U.S. 510,

6    514, 114 S.Ct. 1019 (1994); *Romero v. Kitsap County*, 931 F.2d 624, 627-628 (9th Cir. 1991).  "The

7    protection of qualified immunity applies regardless of whether the government official's error is a

8    mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v.*

9    *Callahan*, 555 U.S. 223, 129 U.S. 808, 815 (2009) (internal quotation omitted).   To analyze qualified

10   immunity, a court determines: (1) what right has been violated; (2) whether that right was so "clearly

11   established" at the time of the incident that a reasonable officer would have been aware of its

12   constitutionality; and (3) whether a reasonable public officer could have believed that the alleged

13   conduct was lawful. *Jensen v. City of Oxnard*, 145 F.3d 1078, 1085 (9th Cir. 1998), *cert. denied*, 525

14   U.S. 1016, 119 S.Ct. 540 (1988).

15                              ***Clearly Established Right***

16         The "contours" of the allegedly violated right "must be sufficiently clear that a reasonable official

17   would understand that what he is doing violates that right. . . . [I]n the light of preexisting law the

18   unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039 (1987).

19   "The question is what the officer reasonably understood his powers and responsibilities to be, when he

20   acted under clearly established standards." *Saucier v. Katz*, 533 U.S. 194, 208, 121 S.Ct. 2151 (2001).

21   The "right allegedly violated must be defined at the appropriate level of specificity before a court can

22   determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692 (1999).

23          "To determine that the law was clearly established, we need not look to a case with identical or

24   even 'materially similar' facts." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003), *cert. denied*,

25   543 U.S. 825, 125 S.Ct. 43 (2004).  "Rather, the 'standard is one of fair warning: where the contours of

26   the right have been defined with sufficient specificity that a state official had fair warning that [his]

27   conduct deprived a victim of his rights, [he] is not entitled to qualified immunity.'" *Serrano*, 345 F.3d

28   at 1077 (quoting *Haugen v. Brosseau*, 339 F.3d 857, 873 (9th Cir. 2003)).  "[O]fficials can still be on

1   notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*,

2   536 U.S. 730, 741, 122 S.Ct. 2508 (2002).

3        Defendants contend that law as to "threat of a taser under the Fourth Amendment is not clearly

4   established." Defendants argue that "courts have not fleshed out whether or when the mere threat of use

5   of a taser is an unreasonable use of force." *Sanders v. City of Fresno*, 551 F.Supp.2d 1149, 1170 (E.D.

6   Cal. 2008) ("use of the Taser is a medium or intermediate level of force").

7        Defendants further contend that law is not clearly established whether a person detained 20-30

8   minutes "must be allowed to go into his house to use the restroom rather than use the woods in a rural

9   area." *See Pacific Marine Center, Inc. v. Silva*, 809 F.Supp.2d 1266, 1287 (E.D. Cal. 2011) ("A

10  complete denial of the usage of the toilet over the period of many hours, might give rise to a

11  constitutional violation.") Defendants note that courts have not fleshed out clearly established rights for

12  access to restroom facilities under the facts alleged in the complaint.

13       Defendants are correct that Mr. Gaede's alleged rights at issue are not clearly established.

14  Defendants raise convincing points as to the clearly established right prong of qualified immunity.

15                              ***Reasonable Belief***

16       Defendants fault the complaint's absence of facts of Park Ranger Telles' conduct which is "so

17  clearly unconstitutional that a reasonable officer necessarily would have know that his actions were

18  unlawful."

19        "If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled

20  to the immunity defense." *Saucier*, 533 U.S. at 205, 121 S.Ct. 2151. "The question is what the officer

21  reasonably understood his powers and responsibilities to be, when he acted under clearly established

22  standards." *Saucier*, 533 U.S. at 208, 121 S.Ct. 2151. "Qualified immunity shields an officer from suit

23  when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law

24  governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596,

25  599 (2004). "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the

26  existence of probable cause or exigent circumstances, for example, and in those situations courts will

27  not hold that they have violated the Constitution." *Saucier*, 533 U.S. 194, 121 S.Ct. at 2158. Peace

28  officers in "tense situations" are afforded "broad discretion" and "immunity even when officers make

1   mistakes." *See Jeffers v. Gomez*, 267 F.3d 895, 909 (9th Cir. 2001).

2          To support the reasonable belief factor, defendants point to complaint allegations that Park

3   Ranger Telles encountered Mr. Gaede wearing a pistol holster and openly displaying a swastika in the

4   vicinity of an injured African American motorcyclist who had damaged Mr. Gaede's bench. Defendants

5   note that although Mr. Gaede was detained 20-30 minutes and precluded to enter his home, Mr. Gaede

6   was not arrested and there are no facts that Mr. Gaede requested to use the restroom repeatedly or

7   expressed reservation to urinate outdoors.

8          Defendants explain that law enforcement officers are entitled "to use reasonable force to protect

9   the public." "The need to protect or preserve life or avoid serious injury is justification for what would

10  be otherwise illegal absent an exigency or emergency." *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct.

11  2408 (1978). Defendants attribute to Park Ranger Telles an objectively reasonable basis to protect

12  immediately the motorcyclist, emergency responders and himself and to use the threat of a tazer "to

13  secure a safe zone." Defendants conclude that under the alleged circumstances, no reasonable officer

14  would have known his actions were unlawful.

15         The record suggests nothing to challenge defendants' points that a reasonable officer in Park

16  Ranger Telles' position would have believed Park Ranger Telles' alleged conduct was unlawful.

17  Defendants establish that Park Ranger Telles is entitled to qualified immunity.

18                                  **CONCLUSION AND ORDER**

19         Given that the complaint's claims are legally barred, this Court will not grant Mr. Gaede an

20  attempt to amend. For the reasons discussed above, this Court:

21         1.      DISMISSES with prejudice this action; and

22         2.      DIRECTS the clerk to enter judgment against plaintiff Bill Gaede and in favor of

23                 defendant United States Forest Service and Richard Telles and to close this action.

24         IT IS SO ORDERED.

25  **Dated:   January 9, 2013          /s/ Lawrence J. O'Neill**
                                        UNITED STATES DISTRICT JUDGE

26

27

28